IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PHYLLIS J. MCRAE, | ) | No. 31628-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TAHITIAN, LLC, a Washington Limited | ) | PUBLISHED OPINION |
| Liability Company, d/b/a TAHITIAN; and | ) | |
| FEN LI and JIANMING LI, individually and | ) | |
| as a marital community, | ) | |
| | ) | |
| Appellants. | ) | |

BROWN, J.—Employer Tahitian LLC appeals a trial court judgment for $35,980.53

to former motel employee Phyllis J. McRae. The codefendants, motel owners Fen and

Jianming Li, do not appeal. Tahitian contends the trial court erred when attempting to

harmonize seemingly contradictory jury verdict answers by altering completed verdict

forms to shift damages from Ms. Li to Tahitian. Based on the supplemental record

showing jury annotations to the elements of each claim in the jury instructions, we

decide the trial court correctly harmonized the verdict answers. Accordingly, we affirm.

FACTS

On March 24, 2011, soon after her promotion to manager of the Pasco Tahitian

Inn, Ms. McRae was attacked by a motel guest. She claimed Ms. Li reduced her

working hours to zero after a dispute erupted between them regarding the way Ms. McRae had handled the guest. The last day Ms. McRae worked was April 15, 2011. She claimed Ms. Li wrongfully withheld wages, paying her $9.32 per hour instead of the $10.00 promised upon her promotion. The withheld wages totaled $78.40.

In November 2011, Ms. McRae sued Tahitian and the Lis for wrongful discharge in violation of public policy, wrongful withholding of wages, personal injury, and intentional infliction of emotional distress. At the close of her case, Ms. McRae voluntarily dismissed all claims against the Lis except the wage claim. The parties apparently focused on the personal injury claim at trial.

The trial court submitted four verdict forms to the jury, including three verdicts labeled A, B, and C, and one special verdict. Verdict Form A directed the jury to address the claims against Tahitian solely, and to specify Ms. McRae's past and future economic and noneconomic damages. Tahitian argues Verdict Form A pertained to the personal injury claim against it. Verdict Form B pertained to both Tahitian and Ms. Li. Verdict Form C directed the jury to address the wage claim against Ms. Li, and to specify Ms. McRae's past economic damages—the difference between the wage promised and the wage actually paid. When the jury returned the forms, Verdict Form A was blank; the court ordered the jury to complete the form during further deliberations. The completed forms read:

## VERDICT FORM A

We, the jury, find for the plaintiff against the defendant Tahitian, LLC in the following sums:

No. 31628-9-III
*McRae v. Tahitian LLC*

(1)    for past economic damages    $ ~~35,~~  [presiding juror's initials] 0

(2)    for future economic damages    $ 0

(3)    for past and future noneconomic damages  $ 0

**DATE:** 11/6/12             [presiding juror's signature]
                                                  **Presiding Juror**

. . . .

## VERDICT FORM B

We, the jury, find for the defendants.

**DATE:** 11/6/12             [presiding juror's signature]
                                                  **Presiding Juror**

. . . .

## VERDICT FORM C

We, the jury, find for the plaintiff against the defendant Fen Li in the following sums:

(1)    **For past economic damages**    $ 35,980.53

**DATE:** 11/6/12             [presiding juror's signature]
                                                  **Presiding Juror**

$35,902.13 (4/11 → 9/12)
            78.40 (wage)
      $35,980.53 *

\* *Medical not added*
*due to personal*
*injury not proved*

. . . .

## SPECIAL VERDICT FORM

We, the jury, answer the questions submitted by the court as follows:

**QUESTION 1:**  **Did the Tahitian, LLC willfully and with intent to deprive the plaintiff of any part of her wages, pay the plaintiff a lower wage than the Tahitian, LLC was obligated to by an employment agreement?**
**ANSWER:** *Yes* ~~*No*~~ [presiding juror's initials] (Write "yes" or "no")

3

No. 31628-9-III
*McRae v. Tahitian LLC*

QUESTION 2: **Did Fen LI willfully and with intent to deprive the plaintiff of any part of her wages, pay the plaintiff a lower wage than Fen Li was obligated to by an employment agreement?**
ANSWER: ~~No~~ *Yes* [presiding juror's initials] (Write "yes" or "no")

QUESTION 3: **Was Fen Li an officer, vice principal, or agent of Tahitian, LLC at the time wages were withheld from the plaintiff?**
ANSWER: *Yes* (Write "yes" or "no")

QUESTION 4: **What is the total amount of the plaintiff's past and future economic damages for the personal injury claim?**
ANSWER: $ *0*

(*DIRECTION: After answering the above questions, sign this verdict form and notify the bailiff.*)

DATE: 11/6/12                                    [presiding juror's signature]
                                                                **Presiding Juror**

Clerk's Papers (CP) at 104-08.

After the trial court polled and discharged the jury, the Lis presented three alternative motions for judgment as a matter of law, a new trial, or a reduced judgment. Our supplemental record shows the jury wrote "Yes" and "No" or "Y" and "N" next to the elements of each claim in the jury instructions. The jury's resolution of these critical inquiries plainly shows its intent. Harmonizing the verdicts, the court concluded the jury intended to award the $35,902.13 in economic damages against Tahitian instead of the Lis because, it reasoned, those damages related solely to the wrongful discharge claim against Tahitian, as Ms. McRae had voluntarily dismissed that claim against the Lis. The court concluded the jury intended to award the $78.40 in wrongfully withheld wages

4

against Tahitian as well as the Lis because all defendants participated in this withholding. The court therefore reduced the verdict finding against the Lis from $35,980.53 to $78.40 and increased the verdict finding against Tahitian from zero dollars to $35,980.53. Over objection, the trial court entered judgment against Tahitian and the Lis for $35,980.53. Tahitian appealed.

## ANALYSIS

The issue is whether the trial court erred in entering judgment against Tahitian for $35,980.53 in its attempt to harmonize the seemingly contradictory jury verdict answers. Tahitian contends the verdicts required the court to enter judgment against it for zero dollars or against Ms. McRae entirely. We review the legal effect of a jury verdict de novo. *Estate of Dormaier v. Columbia Basin Anesthesia, P.L.L.C.*, 177 Wn. App. 828, 866, 313 P.3d 431 (2013).

Ms. McRae initially argues Tahitian did not preserve its error claims for our review because it raised the issues for the first time in response to the post-trial motions. Where jury verdict answers conflict with each other, a party generally waives any objection by failing to assert it before the trial court discharges the jury. *See Gjerde v. Fritzsche*, 55 Wn. App. 387, 393-94, 777 P.2d 1072 (1989); *Dormaier*, 177 Wn. App. at 868 n.13. And, where jury verdict answers reflect a misunderstanding or misapplication of the jury instructions during deliberations, any misconduct or irregularity generally inheres in the verdict after the trial court polls the jury in open court. *See Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 768-71, 818 P.2d 1337 (1991); *Dormaier*, 177 Wn. App. at 868 n.13. We retain discretion to consider these

5

error claims on review. *See* RAP 2.5(a). We exercise this discretion here because *the* issues mainly concern the trial court's action in entering the judgment, to which Tahitian timely objected, and do not so much concern the jury's procedure in reaching the verdicts. More importantly, fundamental notions of justice require a trial court judgment to rest on an unequivocal jury verdict for one party or another, not both.

Once a jury renders a verdict, the trial court must declare its legal effect and enter a judgment upon it where appropriate. *Dep't of Highways v. Evans Engine & Equip. Co.*, 22 Wn. App. 202, 205-06, 589 P.2d 290 (1978); *Minger v. Reinhard Distrib. Co.*, 87 Wn. App. 941, 946, 943 P.2d 400 (1997); *see* CR 49, 58. A court liberally construes a verdict so as to discern and implement the jury's intent, if consistent with the law. *Wright v. Safeway Stores, Inc.*, 7 Wn.2d 341, 344, 109 P.2d 542 (1941) (citing *Cameron v. Stack-Gibbs Lumber Co.*, 68 Wash. 539, 544, 123 P. 1001 (1912)). A court may view a verdict in light of the jury instructions and trial evidence. *Meenach v. Triple "E" Meats, Inc.*, 39 Wn. App. 635, 639, 694 P.2d 1125 (1985); *Evans Engine & Equip.*, 22 Wn. App. at 206.[1] We begin by considering how our civil rules required the jury to use the verdict forms.

Verdict B is a general verdict because it asked the jury to "pronounce[] generally upon all or any of the issues in favor of either the plaintiff or defendant." CR 49. Verdicts A and C are general verdicts accompanied by interrogatories because they additionally asked the jury to answer "written interrogatories upon one or more issues of

---

[1] For the reasons stated in this paragraph, we reject Tahitian's argument that the trial court lacked authority to act sua sponte in entering judgment upon the jury verdicts. A trial court must do what is necessary and proper to effectuate the jury's true intent.

fact the decision of which is necessary to a verdict." CR 49(b) And, the special verdict is so called because it asked the jury to return "a special written finding upon each issue of fact" without rendering a general verdict favoring one party or another. CR 49(a). Submitting both a general verdict and a special verdict to a jury is unusual and can create complications partly provided for in our civil rules. *See* 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 32:11, at 357 (2d ed. 2009). Here, the complications of submitting a general verdict (B), two general verdicts with interrogatories (A and C, hybrids of general and special verdicts segregating damage amounts), and a special verdict became apparent after the court discharged the jury. By then, of course, the court could no longer "return the jury for further consideration of its answers." CR 49(b).

In special verdict answers 1 and 2, the jury found Tahitian and Ms. Li wrongfully withheld wages. In special verdict answer 3, the jury found Ms. Li acted as Tahitian's agent in this withholding. In general verdict C, the jury found against Ms. Li and wrote $35,980.53 in the interrogatory answer. Then the jury, on its own, amended the form to show this amount included $35,902.13 in economic damages and $78.40 in wrongfully withheld wages, and excluded personal injury damages. In general verdict A, the jury found against Tahitian but wrote zero dollars in the interrogatory answers after crossing out the figure "$35,". CP at 106. The presiding juror also signed general verdict B, which purported to find for both Tahitian and Ms. Li.

These jury verdict answers seemingly conflict. But our supplemental record plainly shows the jury intended to find (1) against Tahitian on the wrongful discharge

7

claim and wage claim, (2) against Ms. Li on the wage claim, and (3) for Tahitian on the personal injury claim and intentional infliction of emotional distress claim. It follows that the $35,902.13 in economic damages must be awarded against Tahitian solely and the $78.40 in wrongfully withheld wages must be awarded against both Tahitian and Ms. Li. Thus, the trial court correctly harmonized the verdict answers. The verdict answers were "defective or erroneous in a mere matter of form, not affecting the merits or rights of the parties." *City Bond & Share, Inc. v. Klement*, 165 Wash. 408, 410-11, 5 P.2d 523 (1931); *accord Gosslee v. City of Seattle*, 132 Wash. 1, 2-3, 231 P. 4 (1924). The court did not "under the guise of amending a verdict, invade the province of the jury or substitute his verdict for theirs." *City Bond & Share*, 165 Wash. at 411. We are persuaded that the court's amendment effectuates the jury's true intent. *See Gosslee*, 132 Wash. at 3.

Given all, we conclude the trial court did not err in entering judgment against Tahitian for $35,980.53 in its attempt to harmonize the seemingly contradictory jury verdict answers. We do not reach Tahitian's due process contention because we conclude the briefing on it is too sparse for us to explore constitutional implications. *See Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990) (citing *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989)); RAP 10.3(a)(6). We deny Ms. McRae's request for appellate attorney fees and costs because the plain language of RCW 4.84.030 limits such an award to the prevailing party in a superior court action. *See Madrid v. Lakeside Indus.*, 98 Wn. App. 270, 274, 990 P.2d 411(1999).

No. 31628-9-III
*McRae v. Tahitian LLC*

Affirmed.

Brown, J.
_____
Brown, J.

WE CONCUR:

Siddoway, C.J.
_____
Siddoway, C.J.

Fearing, J.
_____
Fearing, J.

9